ORIGINAL

RECORDING REQUESTED BY
AND MAIL TO

1  MELINDA HAAG (CSBN 132612)
   United States Attorney

2  
   MIRANDA KANE (CSBN 150630)

3  Chief, Criminal Division

4  PATRICIA J. KENNEY (CSBN 130238)
   Assistant United States Attorney

5  
   450 Golden Gate Avenue

6  San Francisco, CA 94102
   Telephone: 415.436.6857

7  Facsimile:  415.436.7234
   Email: patricia.kenney@usdoj.gov

8  
   Attorneys for United States of America

9

2011024849        01/19/2011 11:43 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:          90.00

26   PGS

26

10  UNITED STATES DISTRICT COURT

11  NORTHERN DISTRICT OF CALIFORNIA

12  SAN FRANCISCO DIVISION

13  UNITED STATES OF AMERICA,                ) Case No.  CV 11-0258 EMC
                                            )
14           Plaintiff,                      )
                                            )
15           v.                             ) NOTICE OF PENDENCY OF ACTION
                                            ) (LIS PENDENS)
16  (1) REAL PROPERTY LOCATED AT 405         )
    BOULDER COURT, SUITE 800,                )
17  PLEASANTON, CALIFORNIA (APN              )
    946-4547-297);                           )
18  (2) REAL PROPERTY LOCATED AT 405         )
    BOULDER COURT, SUITE 700,                )
19  PLEASANTON, CALIFORNIA (APN              )
    946-4547-296);                           )
20  (3) 1087 MURRIETA BOULEVARD, #133,       )
    LIVERMORE, CALIFORNIA (APN               )
21  097-0085-132);                           )
    (4) 2890 VICTORIA RIDGE COURT,           )
22  PLEASANTON, CALIFORNIA (APN              )
    946-4580-018); AND                       )
23  (5) 1371 GERMANO WAY, PLEASANTON,        )
    CALIFORNIA (APN 950-29-18),              )
                                            )
24           Defendants.                     )
                                            )
25  _____  )
                                            )
    SUSAN XIAO-PING SU,                      )
26                                           )
             Owner of Record.                )
27                                           )
    _____  )

28

1    NOTICE IS HEREBY GIVEN that an action has been commenced in the above-entitled

2  Court pursuant to a Complaint for Forfeiture, a copy of which is attached hereto as Exhibit A,

3  filed by the United States of America on January 19, 2011 to secure the judicial forfeiture of real

4  property and improvements located at 405 Boulder Court, Suite 800, Pleasanton, California

5  (APN 945-4547-297).

6    In the Complaint for Forfeiture, plaintiff alleges that the defendant real property is subject to

7  forfeiture, pursuant to 18 U.S.C. §§ 981(a)(1)(C), 1956(c)(7), 1961(1), 28 U.S.C. § 2461(C) and

8  18 U.S.C. § 984 in violation of 18 U.S.C. §§ 1546(a) (Fraud and Misuse of Visas, Permits, and

9  other Documents); 1001 (False Statements); 1343 (Wire Fraud)  and  1344 (Mail Fraud).  In

10  addition, the defendant real property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A)

11  in violation of 18 U.S.C. § 1956 and 1957.

12    The owner of record is Susan Xiao-Ping Su, a married woman.

13

14  Dated: January *19*, 2011                    Respectfully submitted,

15                                               MELINDA HAAG
                                                 United States Attorney
16

17                                               *Patricia J Kenney*
18                                               PATRICIA J. KENNEY
                                                 Assistant United States Attorney
19

20

21

22

23

24

25

26

27

28

NOTICE OF PENDENCY OF ACTION (LIS PENDENS)                                        2

CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is an employee in the Office of the United States Attorney for the Northern District of California and is a person of such age and discretion to be competent to serve papers.  The undersigned further certifies that he caused a copy of:

NOTICE OF PENDENCY OF ACTION (LIS PENDENS)

to be served via certified mail upon the person(s) below at the place(s) and address(es) which is the last known address(es):

Susan Xiao-Ping Su
405 Boulder Court, Suite 800
Pleasanton, CA 94566

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this ⟨19⟩ day of January, 2011, at San Francisco, California.

HECTOR LOPEZ
Legal Assistant
Asset Forfeiture Unit

EXHIBIT A

1   MELINDA HAAG (CSBN 132612)
    United States Attorney
2
    MIRANDA B. KANE (CSBN 150630)
3   Chief, Criminal Division

4   PATRICIA J. KENNEY (CSBN 130238)
    Assistant United States Attorney
5
    450 Golden Gate Avenue
6   San Francisco, CA 94102
    Telephone: 415.436.6857          E-filing
7   Facsimile:  415.436.7234
    Email: patricia.kenney@usdoj.gov
8
9   Attorneys for United States of America

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12               SAN FRANCISCO DIVISION

13
    UNITED STATES OF AMERICA,          )   CV11 11-CV- 0258
14                                      )
                      Plaintiff,        )
15                                      )
            v.                          )
16                                      )
    (1) REAL PROPERTY LOCATED AT 405    )
17  BOULDER COURT, SUITE 800,           )   COMPLAINT FOR FORFEITURE
    PLEASANTON, CALIFORNIA (APN         )
18  946-4547-297);                      )
    (2) REAL PROPERTY LOCATED AT 405    )
19  BOULDER COURT, SUITE 700,           )
    PLEASANTON, CALIFORNIA (APN         )
20  946-4547-296);                      )
    (3) 1087 MURRIETA BOULEVARD, #133,  )
21  LIVERMORE, CALIFORNIA (APN          )
    097-0085-132);                      )
22  (4) 2890 VICTORIA RIDGE COURT,      )
    PLEASANTON, CALIFORNIA (APN         )
23  946-4580-018); AND                  )
    (5) 1371 GERMANO WAY,               )
24  PLEASANTON, CALIFORNIA (APN         )
    950-29-18),                         )
25                                      )
                      Defendants.       )
26                                      )
27
28

## NATURE OF THE ACTION

1.   The United States in this judicial forfeiture action seeks to forfeit the five, captioned defendant parcels of real estate which Susan SU owns and purchased with the proceeds of an elaborate scheme to defraud – one that involves making false statements and misrepresentations to the Department of Homeland Security ("DHS"), using wire transfers and using the United States mails. SU, and others, created TRI-VALLEY UNIVERSITY, INC. ("TRI-VALLEY" or "TVU"), naming SU in the articles of incorporation as the Chief Operating Officer. Thereafter, SU, and others, made false statements and misrepresentations in a petition to DHS to obtain approval for TRI-VALLEY to enroll F-1 students and issue visa related documents (I-20s) which enable students to obtain student visas from the government. Since its inception, however, TRI-VALLEY, has been a sham university which SU, and others, have used to facilitate foreign nationals in illegally acquiring student immigration status that authorizes them to remain in the United States. Since February 2009 when they obtained DHS approval, SU and TRI-VALLEY have made millions of dollars in tuition fees for issuing these visa related documents which enable foreign nationals obtain illegal student immigration status. This scheme to defraud makes it difficult, if not impossible, for law enforcement to detect the illegal status of those foreign nationals.

2.   The actions of SU, and others, violate 18 U.S.C. §§ 1546(a) (fraud and misuse of visas, permits, and other documents); 1341 (mail fraud); 1343 (wire fraud); and 1957(a) (money laundering). The millions acquired from the tuition fees are proceeds of the illegal fraudulent scheme. SU has used criminal proceeds from these violations to purchase the five defendant parcels of real estate which are subject to forfeiture under 18 U.S.C. §§ 981(a)(1)(C). In purchasing the five defendant parcels, SU engaged in financial transactions with criminally derived property in excess of $10,000 which constitutes money laundering in violation of 18 U.S.C. § 1957(a), and thus the parcels are also subject to forfeiture under 18 U.S.C. § 981(a)(1)(A).

## JURISDICTION AND VENUE

3.   This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355; 18 U.S.C. § 981(a)(1)(A) and 18 U.S.C. § 981(a)(1)©.

///

Complaint for Forfeiture
No. 11-CV-_____

2

4.   Venue in this Court is proper because the five above captioned parcels of real estate are located in Pleasanton, California which is in the Northern District of California.  28 U.S.C. §§ 1355(b) and 1395.

5.   The intra-district venue is proper either in the San Francisco or Oakland Division within the Northern District of California.  Civ. L. R. 3-2(d).

## PARTIES

6.   Plaintiff is the United States of America.

7.   The first defendant is Real Property Located at 405 Boulder Court, Suite 800, Pleasanton, California (APN 946-4547-297) and its legal description follows:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF PLEASANTON, COUNTY OF ALAMEDA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL NO. 1:
A condominium consisting of: (1) a separate interest in Unit No. H1 in Condominium Building No. 1, as shown on the Condominium Plan (the "Plan") recorded on December 14, 2009 as Document No. 2009-385402 in the records of Alameda County, California, and as further described in the Vision West Commerce Centre Declaration of Restrictions (CC&Rs) (the "Declaration") recorded on December 14, 2009 as Document No. 2009-385403 in the records of Alameda County, California, and as described in the Declaration; (2) an undivided 1/8th interest in the Building Common Area of Condominium Building No. 1 described in the Plan and in Section 1.6 of the Declaration; and (3) an undivided 1/28th interest in the Condominium Common Area described in the Plan and in Section 1.10 of the Declaration, which condominium is located on the real property described on the maps entitled "Parcel Map 9805" (the "Map") recorded on December 14, 2009 in Book 315 of Maps, Pages 3 and 4 in the records of Alameda County, California.

EXCEPTING AND RESERVING THEREFROM THE FOLLOWING:
(I)      All of the Condominium Unites in the Condominium Building described in Parcel No. 1 above other than the Unit described in Parcel No. 1 above;
(ii)     The exclusive right to use all of those areas designated as "Exclusive Use Common Area" as described in the Declaration and Plan set aside and allocated for the exclusive use of the Owners of Condominiums other than the Condominiums described in Parcel No. 1 above; and
(iii)    Easements and rights for use, enjoyment, access, ingress, egress, encroachment, maintenance, repair, replacement, drainage, support, and other purposes as described in the Declaration, including the Condominium Building easement described in Section 2.7 of the Declaration.

SUBJECT TO:
Non-exclusive rights of ingress, egress and support through the Common Area.

PARCEL NO. 2:
Non-exclusive rights of ingress, egress and support in, through and over the Common Area of the Condominium Building described in Parcel No. 1 above.

PARCEL NO. 3:
An exclusive right to use the area(s) designated as Exclusive Use Common Area(s) and appurtenant to Parcel No. 1 above as described in the Declaration and the Plan.

Complaint for Forfeiture
No. 11-CV-_____                                3

PARCEL NO. 4:
Easements on, in, over and through the Association Property described in Sections 2.3, 2.4, 2.5, 2.6 and 2.7 of the Declaration, for access to and use of any Exclusive Use Common Area situated thereon and appurtenant to Parcel No. 1 as described in the Declaration, and for support from the land under and adjacent tot he Improvements within Parcel No. 1 above, all of which are subject to the covenants, conditions, restrictions, right, duties, benefits and burdens described in the Declaration.

Assessor's Parcel No. 946-4547-297 (New)
formerly 946-4547-267-01

8.    The second defendant is Real Property Located at 405 Boulder Court, Suite 700, Pleasanton, California (APN 946-4547-296) and its legal description follows:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF PLEASANTON, COUNTY OF ALAMEDA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL NO. 1:
A condominium consisting of: (1) a separate interest in Unit No. G1 in Condominium Building No. 1, as shown on the Condominium Plan ( the "Plan") recorded on December 14, 2009 as Document No. 2009-385402 in the records of Alameda County, California, and as further described in the Vision West Commerce Center Declaration of Restrictions (CC&Rs) (the "Declaration") recorded on December 14, 2009 as Document No. 2009-385403 in the records of Alameda County, California, and as described in the Declaration; (2) an undivided 1/8th interest in the Building Common Area of Condominium Building No. 1 described in the Plan and in Section 1.6 of the Declaration; and (3) an undivided 1/28th interest in the Condominium Common Area described in the Plan and in Section 1.10 of the Declaration, which condominium is located on the real property described on the map entitled "Parcel Map 9805" (the "Map") recorded on December 14, 2009 in Book 315 of Maps, Pages 3 and 4 in the records of Alameda County, California.

EXCEPTING AND RESERVING THEREFROM THE FOLLOWING:
(I)    All of the Condominium Units in the Condominium Building described in Parcel No. 1 above other than the Unit described in Parcel No. 1 above;
(ii)    The exclusive right to use all of those areas designated as "Exclusive Use Common Area" as described in the Declaration and Plan set aside and allocated for the exclusive use of the Owners of Condominiums other than the Condominiums described in Parcel No. 1 above; and
(iii)    Easements and rights for use, enjoyment, access, ingress, egress, encroachment, maintenance, repair, replacement, drainage, support, and other purposes as described in the Declaration, including the Condominium Building easement described in Section 2.7 of the Declaration.

SUBJECT TO:
Non-exclusive rights of ingress, egress and support through the Common Area.

PARCEL NO. 2:
Non-exclusive rights of ingress, egress and support in, through and over the Common Area of the Condominium Building described in Parcel No. 1 above.

PARCEL NO. 3:
An exclusive right to use the area(s) designated as Exclusive Use Common Area(s) and appurtenant to Parcel No. 1 above as described in the Declaration and the Plan.

PARCEL NO. 4
Easements on, in, over and through the Association Property described in Sections 2.3, 2.4, 2.5, 2.6 and 2.7 of the Declaration, for access to and use of any Exclusive Use Common Area situated thereon and appurtenant to Parcel No. 1 as described in the Declaration, and for support from the land under

Complaint for Forfeiture
No. 11-CV-_____

4

and adjacent to the Improvements within Parcel No. 1 above, all of which are subject to the covenants, conditions, restrictions, right, duties benefits and burdens described in the Declaration.

Assessor's Parcel No 946-4547-296 (New)
formerly 946-4547-267-01 (Portion)

9.     The third defendant is 1087 Murrieta Boulevard, #133, Livermore, California (APN 097-0085-132), and its legal description follows:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LIVERMORE, COUNTY OF ALAMEDA, STATES OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL ONE:
AN UNDIVIDED 1/154TH INTEREST IN AND TO ALL OF TRACT 3615, FILED FEBRUARY 18TH, 197, IN MAP BOOK 93, PAGES 74 AND 75, ALAMEDA COUNTY RECORDS.

EXCEPTING THEREFROM, THE FOLLOWING:
A. ALL OF THE CONDOMINIUM UNITS, AS SHOWN ON THE CONDOMINIUM PLAN, ATTACHED AS EXHIBIT "B" TO THE DECLARATION OF RESTRICTIONS RECORDED NOVEMBER 20, 1973, SERIES NO. 73-154587, OFFICIAL RECORDS.

B. THE EXCLUSIVE RIGHT TO USE ALL THOSE RESTRICTED COMMON AREAS, DESIGNATED AS BALCONIES AND PATIOS, SHOWN ON THE CONDOMINIUM PLAN REFERRED TO ABOVE.

PARCEL TWO:
UNIT 133, AS SHOWN ON THE CONDOMINIUM PLAN REFERRED TO IN PARCEL ONE ABOVE.

PARCEL THREE:
THE EXCLUSIVE RIGHT TO USE THOSE AREAS DESIGNATED AS "EXCLUSIVE USE COMMON AREAS" AS SHOWN ON THE CONDOMINIUM PLAN REFERRED TO IN PARCEL ONE ABOVE AND DEFINED IN THE "AMENDED AND RESTATED DECLARATION ON COVENANTS, CONDITIONS AND RESTRICTIONS ESTABLISHING A PLAN FOR CONDOMINIUM OWNERSHIP OF 1085-1087 MURRIETA BOULEVARD", RECORDED APRIL 7, 2005, SERIES NO. 2005136300, OFFICIAL RECORDS.

APN: 097-0085-132

10.    The fourth defendant is 2890 Victoria Ridge Court, Pleasanton, California (APN 946-4580-018) , and its legal description follows:

THE LAND DESCRIBED HEREIN IS SITUATED ON THE STATE OF CALIFORNIA, COUNTY ALAMEDA, CITY OF PLEASANTON, AND DESCRIBED AS FOLLOWS:

LOT 18, TRACT 5908, FILED DECEMBER 28, 1988, MAP BOOK 181, PAGE 23, ALAMEDA COUNTY RECORDS.

APN: 946-4580-018

11.    The fifth defendant is 1371 Germano Way, Pleasanton, California (APN 950-29-18), and its legal description follows:

Complaint for Forfeiture
No. 11-CV-_____                              5

LOT 14, OF TRACT 7156, FILED JUNE 27, 2000, IN MAP BOOK 251, AT PAGES 57-62, ALAMEDA COUNTY RECORDS.

EXCEPTING THEREFROM:
ALL OIL, MINERALS, GAS, CASINGHEAD GAS, ASPHALTUM AND OTHER HYDROCARBONS AND ALL CHEMICAL GAS, NOW OR HEREAFTER FOUND, SITUATED OR LOCATED IN ALL OR ANY PART OR PORTION OF THE REAL PROPERTY ABOVE-DESCRIBED, LYING MORE THAN FIVE HUNDRED (500) FEET BELOW THE SURFACE THEREOF, TOGETHER WITH THE RIGHT TO SLANT DRILL OR MINE FOR, AND REMOVE ALL OR ANY PORTION OF SAID SUBSTANCES LYING BELOW A DEPTH OF MORE THAN FIVE HUNDRED (500) FEET BELOW THE SURFACE THEREOF, AND THE RIGHT TO GRANT LEASES FOR ALL OR ANY OF SAID PURPOSES; BUT WITHOUT ANY RIGHT WHATSOEVER TO ENTER UPON THE SURFACE OF SAID LAND OR UPON ANY PART OF SAID LAND WITHIN FIVE HUNDRED (500) FEET VERTICAL DISTANCE BELOW THE SURFACE

ALSO EXCEPTING THEREFROM:
THE RIGHT TO DRILL FOR, EXTRACT, PUMP AND USE ALL WATER NOW OF HEREAFTER FOUND, SITUATED OR LOCATED IN ALL OR ANY PART OR PORTION OF THE REAL PROPERTY ABOVE-DESCRIBED; BUT WITHOUT ANY RIGHT WHATSOEVER TO ENTER UPON THE SURFACE OF SAID LAND OR UPON ANY PART OF SAID LAND WITHIN FIVE HUNDRED (500) FEET VERTICAL DISTANCE BELOW THE SURFACE THEREOF.

## APPLICABLE STATUTORY FRAMEWORK

### Limited Duration Student Visas for Foreign Nationals

12.     The Immigration and Nationality Act identifies several categories of foreign nationals who may be admitted to the United States for non-immigrant purposes. *See* 8 U.S.C. § 1101. One category, designated "F-1," comprises "bona fide student[s]" coming temporarily to study at an approved school. 8 U.S.C. § 1101(a)(15)(F)(I); 8 C.F.R. 214.1(a)(2). Those entering the United States on an F-1 student visa are admitted for a temporary period called "duration of status," meaning "the time during which an F-1 student is pursuing a full course of study" at an approved school. 8 C.F.R. 214.2(f)(5)(I). When a student stops pursuing a full course of study, the duration of status ends and the temporary period for which the individual was admitted expires.

13.     A school seeking approval for foreign student attendance must submit a Form I-17, which is a petition to  establish that "(I) It is a bona fide school; (ii) It is an established institution of learning or other recognized place of study; (iii) It possesses the necessary facilities, personnel, and finances to conduct instruction in recognized courses; and (iv) It is, in fact, engaged in instruction in those courses." 8 C.F.R. § 214.3(a), (e).  In addition, there are a number of other requirements which an applicant school must meet before DHS approves an I-17 petition which

Complaint for Forfeiture
No. 11-CV-_____                                6

authorizes a school to enroll F-1 students and provides them with student visas. For example, Section 214.3©, in relevant part, requires that the petitioner "submit evidence that it confers upon its graduates recognized bachelor, master, doctor, professional, or divinity degrees, or if it does not confer such degrees that its credits have been accepted unconditionally by at least three such institutions of higher learning." 8 C.F.R. § 214.3©. This information is solicited on the Form I-17. Instructions attached to the Form I-17 clarify, that "to qualify as 'recognized,' a degree must be issued by an institution accredited by a nationally recognized accrediting agency or association to confer a degree of the type and level in question."

14.     Also, the school's petition must identify "Designated School Officials" ("DSOs"), who certify their knowledge of and intent to comply with student immigration laws and regulations. 8 C.F.R. 214.3(*l*)(3). Once a school is approved, its DSOs are issued IDs and passwords enabling them to access the Student and Exchange Visitor Information System ("SEVIS"), a DHS-operated database of non-immigrant aliens' status. *See* 8 C.F.R. § 214.3(h).

15.     To enter the United States on a student visa, a foreign national must present a Certificate of Eligibility, also known as a SEVIS Form I-20, certifying that the student has been accepted for enrollment in a full course of study and signed by the DSO. 8 C.F.R. § 214.2(f)(1)(i)(a), 214.3(k). Once a student has been granted F-1 status using this "initial" I-20, DSOs are obligated to report on SEVIS, within 21 days, the failure of any student "to maintain status." 8 C.F.R. § 214.3(g)(3)(ii)(A). A "student is considered to be maintaining status if he or she is making normal progress toward completing a course of study." 8 C.F.R. 214.2(f)(5)(i). Physical attendance is required. *See* 8 C.F.R. § 214.2(f)(6)(i)(G). An approved school is bound to report "the termination of attendance of each nonimmigrant student." 8 U.S.C. § 1101(a)(15)(F)(I).

16.     It is a criminal offense to "knowingly forge[] . . . or falsely make[] any . . . document prescribed by statute or regulation for entry into or as evidence of authorized stay . . . in the United States," or to "use[], attempt[] to use, posses[], obtain[], accept[], or receive[]"any such document, "knowing it to be forged . . . or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained." 18 U.S.C. § 1546(a).

# FACTS

## Scheme to Defraud

17.   In or about April 2008, SU, and others, filed articles of incorporation for TRI-VALLEY UNIVERSITY, INC., in which SU is designated as the Chief Operating Officer, a director and agent for service of process.

18.   SU, and others, submitted an I-17 petition to the Department of Homeland Security ("DHS") and later SU sent a supplement to that petition by United States mail which contained false statements and misrepresentations. For example, one false statement and misrepresentation involved whether TVU credits would be accepted by an accredited college or university.  As stated above, DHS requires  a school which is unaccredited, such as TVU, to provide evidence from three accredited colleges or universities that the credits which a student obtains at TVU will be accepted by that college or university for credit.  In a supplement to TVU's I-17 petition, SU sent by the United States mail to DHS three articulation agreements from accredited colleges which stated that each had accepted and would accept for credit the credits which students earned at TVU.  When ICE began to investigate, however, ICE found that at least two of those agreements were false; authorized officials in two of those accredited colleges had not accepted TVU credits in the past and did not agree to accept TVU's credits in the future. Without such evidence from three accredited colleges or universities, DHS would not have approved TVU's I-17 application, and TVU would not have been authorized to issue the visa related documents to any enrolled foreign national.  Relying on the evidence which TVU submitted and unaware that at least two of the articulation agreements were false, DHS approved the TVU application in February 2009.  Thus, the paid tuition of the foreign nationals to whom TVU provided the visa related documents enabling them to illegally obtain student visas constitutes proceeds of the elaborate scheme to defraud.

19.   After DHS approved TVU's I-17 application which contained false statements and misrepresentations, SU and TVU began to issue student visa related documents to foreign nationals who paid tuition in order to illegally acquire student immigration status that authorized them to remain in the United States. ICE's investigation uncovered that TVU is a sham university which SU, and others, are using to provide visa related documents that enable foreign nationals to illegally

Complaint for Forfeiture
No. 11-CV-_____                          8

1   obtain student visas in return for tuition fees, the payment of which in the aggregate has grown
2   rapidly at an exponential rate since TVU's I-17 petition was approved in February 2009. Since the
3   February 2009, SU through TVU has been paid millions of dollars by foreign nationals to illegally
4   obtain student visas that authorize them to remain in the United States.

5        20.    In May, 2010, ICE began an investigation of SU and TVU. During the course of that
6   investigation, ICE reviewed TVU's records in SEVIS and observed that TVU received approval of
7   its I-17 petition on February 17, 2009, and that the DHS site visit as part of the approval process
8   confirmed capacity for approximately 30 students. The TVU SEVIS records showed that TVU had
9   11 active F-1 students by May 2009; 75 by September 2009; 447 by January 2010; and 939 by May
10  2010. More than 95% of the students in active status were citizens of India. And more than half of
11  the students were reported to be residing in a single apartment located at 555 E. El Camino Real,
12  Apartment 415, Sunnyvale, California. In June, ICE interviewed the property manager for 555 E.
13  El Camino Real. The property manager provided the lease agreements for Apartment 415, which
14  identified four TVU F-1 students living there between June 2007 and August 2009, and none since
15  2009. During the course of the investigation, ICE obtained information that the reason TVU reports
16  in SEVIS that most of its foreign students live at 555 El Camino Real, Apartment 415, is in order
17  to conceal that they do not live in California.

18       21.    Also in the course of the investigation, ICE interviewed a witness who had worked
19  at TVU's office and stated that approximately 50% of the tuition fees were paid by credit card, 40%
20  by PayPal, and 10% by cash or check. TVU had Visa and Mastercard processing machines in the
21  TVU office, but SU told the witness that she processed all American Express payments from home.

22       22.    On or about June 3, 2010, ICE equipped a witness with an audio recording device and
23  provided him with written identifying information for two foreign nationals (Student 1 and Student
24  2), whose student status had been terminated in SEVIS, and watched the witness enter TVU's office,
25  which SU had been observed entering previously. The witness told SU that he had two friends who
26  had been terminated in SEVIS and needed TVU admission and new I-20s reflecting their admission.
27  SU agreed and had him obtain the new I-20s from a foreign student-employee. This witness stated
28  that he saw SU sign the initial I-20s, both of which bear signatures in the name of another DSO.

Complaint for Forfeiture
No. 11-CV-_____                                 9

23.     In or shortly before July 2010, the same witness informed ICE that TVU had moved its offices to 405 Boulder Court, Suites 700 and 800, in Pleasanton, California. At the request of ICE, the witness on or about July 27, 2010 went into the new TVU office and paid SU $2000 to activate the status of the two students for whom SU had signed the initial I-20s. This witness observed SU sign "active" I-20s, reflecting the students' active-student status, using another DSO's name. A SEVIS search confirms that TVU activated the status of both students on July 27, transmitting information that both were enrolled in Ph.D. programs. Despite the fact that neither student actually attending classes at TVU, a SEVIS search on November 22, 2010, shows that TVU still has not terminated their active status.

24.     On or about September 20, 2010, an ICE Special Agent placed a recorded call to the TVU office while another ICE Special Agent conducted surveillance outside the office. Speaking to a woman who identified herself as Dr. SU, the ICE Special Agent told SU that he was an officer at San Francisco International Airport and that he had stopped Student 1 attempting to reenter the United States. SU confirmed that her records reflect Student 1 as a current, full-time student at TVU. The agent asked SU to email him scanned copies of Student 1's I-20, transcripts, and a letter confirming his active full-time status. After the call concluded, the ICE Special Agent surveiling the TVU office saw SU quickly exit the TVU office, get an item from a car – a Mercedes Benz with California license plate 6KHC985, registered to Susan SU – and go back into the TVU office. A few minutes later, the ICE Special Agent who told SU he was calling from SFO received an email from ssu@trivalleyuniversity.org with three attachments: an active Form I-20 for Student 1 bearing a signature of "Sophie Su"; TVU transcripts for Student 1; and a letter signed by "Sophie Su" representing that Student 1 is a "full time" graduate student "in good standing."

25.     On or about September 24, 2010, the same ICE Special Agent who telephoned TVU on or about September 20 telephoned TVU again, and spoke to a woman identifying herself as SU again. This time the ICE Special Agent said he was an immigration officer who had stopped Student 2 returning from Yemen. Again, SU advised that her records confirm Student 2 as a current TVU student and, from the same email account, emailed the Special Agent an active I-20, transcript, and

///

Complaint for Forfeiture
No. 11-CV-_____                    10

letter confirming that Student 2 is a full time student in good standing. The I-20 and letter again bore the name "Sophie Su."

26.     ICE's financial investigation of that SU and TVU have a number of accounts:

a.     Wells Fargo business checking account ending in 0454 and held in the name TRI-VALLEY UNIVERSITY, INC and Susan Xiao-Ping SU ("Account 0454");

b.     Wells Fargo business savings account ending in 3640 and held in the name TRI-VALLEY UNIVERSITY and Susan Xiao-Ping SU ("Account 3640");

c.     Wells Fargo business savings account ending in number 4780 and held in the name TRI-VALLEY UNIVERSITY, INC and Susan Xaio-Ping SU ("Account 4780");

d.     PayPal, Inc., account ending in 1921 and held in the name of Susan SU and linked to the email address ssu@trivalleyuniversity.org ("Account 1921");

e.     Citibank account ending in 5029 and held in the name Susan X SU ("Account 5029"); and

f.     Citibank account ending in 3045 and held in the name of Susan X SU ("Account 3045").

Further, SU is the sole signatory on the three Wells Fargo accounts, ending in 0454, 3640 and 4780, and also on the PayPal, Inc., online account ending in 1921. The Wells Fargo business accounts were established in the business name of "TRI-VALLEY UNIVERSITY." The online PayPal account is assigned to Susan SU and linked to email address ssu@trivalleyuniversity.org.

27.     ICE's financial investigation of TVU has also revealed that TVU collects tuition fees from its foreign nationals primarily through one or more of the following methods: (1) online PayPal payment to Account 1921; (2) credit card payments, which are settled into Account 0454; (3) checks, which are deposited into Account 0454; (4) checks, which are deposited into Wells Fargo account ending in 3640; (5) wire transfers to Account 3640; (6) electronic transfers into Account 3640; (7) cash that is deposited into Account 3640; and (8) cash that is deposited into Account 0454. The revenue generated by TVU appears to come almost entirely from payments made by foreign nationals seeking F-1 student status. TVU appears to have created little to no demand among non-foreign nationals.

28.     During the period from February 2009 through August 2010, TVU had more than $2,000,000 in deposits into Wells Fargo Bank account ending in 0454 and its PayPal account ending

Complaint for Forfeiture
No. 11-CV-_____                          11

in 1921. Significantly, a check of the records of the California Employment and Development Department showed that no 2009 wages or earnings had been reported to the State of California for Susan SU.

29. As will be described below, criminally derived proceeds from the deposit of tuition fees in Accounts 0454, 4780, 1921 and 3045 were used to purchase the five, captioned defendant real estate parcels.

30. TVU began its operations and opened its first business bank accounts in or around April of 2008, approximately ten months before it obtained authorization from DHS to enroll foreign students. The chart below illustrates the increase in demand for enrollment created by DHS approval of the fraudulently obtained I-17 petition by comparing deposit activity before DHS approval to deposit activity after DHS approval:

| TRANSACTIONS (Rounded to Nearest $) | 4/2008 – 2/2009 | 2/2009 – 9/2010 |
|---|---|---|
| PayPal Payments Into Account 1921 | $ 1,477 | $1,159,656 |
| Credit Card Payments Settled Into Account 0454 | $     0 | $1,776,036 |
| Checks Deposited Into Account 0454 | $ 4,500 | $   109,349 |
| Checks Deposited Into Account 3640 | $ 5,130 | $    14,480 |
| Wire Transfers Into Account 3640 | $     0 | $    29,589 |
| Electronic Transfers Into Account 3640 | $     0 | $    25,124 |
| Cash Deposited Into Account 3640 | $     0 | $    10,930 |
| Cash Deposited Into Account 0454 | $   880 | $     3,049 |

31. As illustrated above, since obtaining DHS approval to enroll foreign students in February 2009, TVU's foreign student enrollment rate and commensurate revenue have both increased rapidly. As previously stated, each foreign national receiving F-1 status at TVU is charged up to $2,700 per semester to maintain their F-1 status. The number of active F-1 students at TVU

Complaint for Forfeiture
No. 11-CV-_____                          12

1   is reported and is tracked in the SEVIS, a DHS-operated data base of non-immigrant aliens' status.

2   Thus, ICE is able to monitor the number of foreign nationals registered at TVU, and estimate TVU's

3   expected revenue. Due to fluctuations in enrollment and the fact that TVU allows its fees to be paid

4   in installments throughout the year, however, TVU's revenue cannot be estimated with exactness.

5   Below is a table showing foreign student enrollment rates and a conservative estimate of expected

6   revenue collected at the beginning of each new non-summer semester.  Estimated revenue is arrived

7   at by multiplying the number of students by a single semester's tuition fee of $2,700.

8

| MONTH | ACTIVE F-1 STUDENTS | ESTIMATED REVENUE |
|---|---|---|
| 2009 February | 2 | |
| 2009 May (Summer Term) | 11 | |
| 2009 June | 15 | |
| 2009 July | 16 | |
| 2009 September (Fall Term) | 75 | $   202,500 |
| 2009 October | 87 | |
| 2009 November | 108 | |
| 2009 December | 113 | |
| 2010 January (Spring Term) | 447 | $ 1,206,900 |
| 2010 February | 551 | |
| 2010 March | 596 | |
| 2010 April | 602 | |
| 2010 May | 939 | |
| 2010 June | 1,021 | |
| 2010 July | 1,076 | |
| 2010 August | 1,086 | |
| 2010 September (Fall Term) | 1,555 | $ 4,198,500 |
| | | |
| | | |

As of December 30, 2010, SU reported 969 additional foreign nationals in initial status, pending

active F-1 status for the Spring Term.  Additional revenue is expected to be generated through

Complaint for Forfeiture
No. 11-CV-_____                        13

1   January 2011, as the 1555 currently active foreign nationals, and an unknown percentage of the

2   foreign nationals in initial status start paying Spring Term tuition fees.

3       32.    ICE's investigation has revealed that rapid and exponential growth in enrollment and

4   revenue exhibited in the above chart is largely due to TVU's referral/profit-sharing system, which

5   resembles a pyramid scheme.  Once enrolled at TVU, each foreign national may collect up to 20

6   percent of the tuition of any new student that he or she refers.  Foreign nationals may also collect up

7   to 5 percent of the tuition of any new student that his or her referred student refers.  A large

8   percentage of foreign nationals at TVU participate in this referral/profit-sharing system.

9       **Tracing Proceeds to 405 Boulder Court, Suite 800, Pleasanton California**

10      33.    A review of Chicago Title Company escrow account #10-58203182-LE reflects that

11  Susan SU closed escrow on April 13, 2010 for the purchase of 405 Boulder Court (Building 1, Unit

12  800), Pleasanton, CA (APN 946-4547-297). SU's purchase price was $225,000 and she made two

13  deposits to the escrow account from the TVU Wells Fargo business checking Account 0454.  The

14  first deposit was posted to the escrow account on April 6, 2010 and was a $50,000 check dated April

15  2, 2010. On April 6, 2010, Chicago Title issued a receipt for funds for the $50,000 deposit received

16  from Susan Xiao-Ping SU.  The second deposit was posted to the escrow account on April 9, 2010

17  and was a cashier's check dated April 9, 2010 in the amount of $160,986.87.  On April 9, 2010,

18  Chicago Title issued a receipt for funds for the $160,986.87 deposit as received from Susan

19  Xiao-Ping SU.  A third deposit was posted to the escrow account from the seller in the form of a

20  $15,000 cashier's check from Boulder Court Development LLC. As part of the purchase agreement,

21  the seller agreed to pay a $15,000 brokers commission to Colliers International and Charter

22  Properties.  On April 9, 2010, Chicago Title issued a receipt for funds for the $15,000 deposit

23  received from Boulder Court Development LLC.

24      34.    With respect to the first deposit of $50,000, a review of bank records reveals that on

25  April 2, 2010, Check# 1144 was written from TVU's Wells Fargo business checking Account 0454

26  in the amount of $50,000 and made payable to Chicago Title. The handwritten notation "58203182"

27  appears in the memo portion of the check and "Susan Su" appears in the signature block.

28  ///

Complaint for Forfeiture
No. 11-CV-____  _____                14

35.     With respect to the second deposit of $160,986.87, a review of bank records reveals that on April 9, 2010, Susan SU made a withdrawal of $160,986.87 from TVU's Wells Fargo business checking Account 0454 and used the proceeds to purchase a $160,986.87 Wells Fargo cashier's check payable to "Chicago Title Company Escrow# 10-58203182-LE."

36.     On April 13, 2010, a Grant Deed was recorded in the Recorder's Office for Alameda County which transferred title to the real property at 405 Boulder Creek, Suite 800, Pleasanton, California (APN 946-4547-297) to Susan Xiao-Ping SU, a married woman. On April 13, 2010, SU's husband, Hong Sheng Yang, conveyed all of his right, title or interest in that property to SU through an Interspousal Transfer Deed also filed in the Recorder's Office.

### Tracing Proceeds to 405 Boulder Court, Suite 700, Pleasanton California

37.     A review of Chicago Title Company escrow account #0058203281-LE reflects that Susan SU closed escrow on July 12, 2010 for the purchase of 405 Boulder Court (Unit 700), Pleasanton, CA (APN 946-4547-296). SU's purchase price was $325,000 and she made two deposits to the escrow account from the TVU Wells Fargo business checking Account 0454. The first deposit was posted to the escrow account on June 14, 2010 and was a $50,000 check dated June 10, 2010. On June 14, 2010, Chicago Title issued a receipt for funds for the $50,000 deposit received from TVU. The second deposit was posted to the escrow account on July 9, 2010 and was a cashier's check dated July 8, 2010, in the amount of $261,307.49. On July 9, 2010, Chicago Title issued a receipt for funds for the $261,307.49 deposit received from Susan Xiao-Ping SU. Two additional deposits were made into escrow from UFM, Inc. on behalf of the seller in the form of two cashier checks dated June 21, 2010 in the amounts of $8,200 and $6,800. On June 24, 2010, Chicago Title issued a receipt for funds for each of the respective deposits received from UFM, Inc. As part of the purchase agreement, the seller agreed to pay a $15,000 brokers commission to Colliers International and Charter Properties.

38.     With respect to the first deposit of $50,000, a review of bank records reveals that on June 10, 2010, check #1014 was written from the TVU Wells Fargo business checking Account 0454 in the amount of $50,000 and made payable to Chicago Title. The handwritten notation "58203281" appears in the memo portion of the check and "Susan Su" appears in the signature block.

Complaint for Forfeiture
No. 11-CV-_____                          15

1    39.    With respect to the second deposit of $261,307.49, a review of bank records revealed

2    that on July 8, 2010, SU made a withdrawal of $261,307.49 from the TVU Wells Fargo's business

3    checking Account 0454 and used the proceeds to purchase a $261,307.49 Wells Fargo cashier's

4    check payable to Chicago Title Company Escrow #10-5203281.

5    40.    On July 12, 2010, a Grant Deed was recorded in the Recorder's Office for Alameda

6    County which transferred title to the real property at 405 Boulder Creek, Suite 700, Pleasanton,

7    California (APN 946-4547-296) to Susan Xiao-Ping SU, a married woman.

8    **Tracing of Proceeds to 1087 Murrieta Boulevard #133, Livermore, California**

9    41.    A review of Fidelity National Title Company escrow account #0003025282 reflects

10    that SU closed escrow on February 26, 2010 for the purchase of 1087 Murrieta Blvd. #133,

11    Livermore, California (APN 097-0085-132). SU's purchase price was $80,000 and she made two

12    deposits to the escrow account from the TVU Wells Fargo business checking Account 0454. The

13    first deposit was posted to the escrow account on February 18, 2010 and was a $3,000 check dated

14    January 8, 2010. The second deposit was posted to the escrow account on February 25, 2010 and

15    was a wire transfer to Fidelity National Title Escrow No. 09-3025282 in the amount of $78,700.

16    42.    With respect to the first deposit of $3,000, a review of bank records revealed that on

17    January 8, 2010, check #1046 was written from the TVU Wells Fargo business checking Account

18    0454 in the amount of $3,000 and made payable to "Title Company." The handwritten notation

19    "3025282" appears in the memo portion of the check and "Susan Su" appears in the signature block.

20    43.    With respect to the second deposit of $78,700, a review of bank records revealed that

21    on February 25, 2010, a wire transfer was made from the TVU Wells Fargo business checking

22    Account 0454 in the amount of $78,700 to Fidelity National Title. Escrow number 09-3025282 is

23    referenced in the transaction.

24    44.    On February 26, 2010, a Grant Deed was recorded in the Recorder's Office for

25    Alameda County which transferred title to the real property at 1087 Murrieta Boulevard #133,

26    Livermore, California (APN 097-0085-132) to Susan Xiao-Ping SU, a married woman as sole and

27    separate property. Escrow number 09-3025282-AS appears on the document. On February 26,

28    ///

Complaint for Forfeiture
No. 11-CV-_____           16

2010, SU's husband, Hong Shen Yang, conveyed all of his right, title or interest in that property to SU through an Interspousal Transfer Deed also filed with the Recorder's Office.

### Tracing of Proceeds to 2890 Victoria Ridge Court, Pleasanton, California

45.    A review of Placer Title Company escrow account #811-2212 reflects that SU closed escrow on July 21, 2010 for the purchase of 2890 Victoria Ridge Court, Pleasanton, California (APN 946-4580-018). The contract purchase price was $825,000 and SU made three deposits to the escrow account. The first deposit was made on July 7, 2010 and was a $5,000 check dated July 1, 2010 from SU's personal Citibank Account 3045. The source of this $5,000 was a $30,000 TVU check made payable to SU from TVU Wells Fargo Account 0454 dated May 7, 2010 and deposited into SU's personal Citibank Account 3045. The second deposit to escrow was a $700,000 Wells Fargo cashier's check dated July 20, 2010 payable to "Placer Title Company Escrow #811-2212." The third and final deposit to escrow was a $122,990.90 Wells Fargo cashier's check dated July 20, 2010 payable to "Placer Title Company Escrow #811-2212."

46.    With respect to the second  deposit of $700,000, its source was seven $100,000 deposits from the TVU PayPal Account #1921 to the TVU Wells Fargo Account 3640 on July 9, 2010.  On July 20, 2010, SU withdrew $700,000 from Account 3640, and used the proceeds to purchase the $700,000 Cashier's Check payable to Placer Title Company Escrow #811-2212.

47.    With respect to the third deposit of the Cashier' Check for $122,990.90, its source was $100,000 withdrawn from the TVU Wells Fargo Account 4780 and $22,990.90 withdrawn from the TVU Wells Fargo Account 0454. On July 20, 2010, SU used both of these withdrawals to purchase the $122,990.90 Wells Fargo cashier's check payable to Placer Title Company Escrow #811-2212.

48.    On July 21, 2010, a Grant Deed was recorded in the Recorder's Office for Alameda County which transferred title to the real property at 2890 Victoria Ridge Court, Pleasanton, California (APN 946-4580-018) to Susan SU, a married women as her sole and separate property. Escrow number 811-2212-EV appears on the document. On July 21, 2010, SU's husband, Hong S. Yang, conveyed all of his right, title and interest in that property to Susan through an Interspousal Transfer Deed also filed with the Recorder's Office.

Complaint for Forfeiture
No. 11-CV-_____                                    17

### Tracing of Proceeds to 1371 Germano Way, Pleasanton, California

49.    A review of escrow account #4120-SP at Prominent Escrow Services, Inc., reflects that SU closed escrow on December 21, 2010 for the purchase of 1371 Germano Way, Pleasanton, CA (APN 950-29-18). SU's purchase price was $1.8 Million dollars and she made three deposits to the escrow account. The first deposit was posted to the escrow account on December 7, 2010 and was a $20,000 Wells Fargo cashier's check dated December 6, 2010 payable to "Prominent Escrow Service Re: 1371 Germano Drive, Pleasanton." The second deposit was posted to the escrow account on December 15, 2010 and was a wire transfer to Prominent Escrow Services, Inc., escrow #4120-SP in the amount of $1,200,000 dollars from SU's Citibank Account 3045. The third deposit was posted to the escrow account on December 15, 2010 and was a wire transfer to Prominent Escrow Services, Inc., escrow #4120-SP in the amount of $600,000 from the TVU Wells Fargo business savings account 4780.

50.    With respect to the first deposit of the cashier's check for $20,000, its source was from SU and, on December 7, 2010, Prominent Escrow Services, Inc. issued Receipt No. 6466 to Susan SU for the sum of $20,000 in earnest money for property 1371 Germano Way, Pleasanton, California 94566.

51.    With respect to the second deposit of $1,200,000, its source was twelve $100,000 withdrawals from TVU PayPal Account #1921 which were all transferred to SU's Citibank Account #3045. On December 15, 2010, SU wire transferred $1,200,000 from her Citibank Account #3045 to Prominent Escrow Services, Inc. escrow #4120-SP. On December 15, 2010, Prominent Escrow Services, Inc. issued Receipt No. 6568 to Susan SU for the sum of $1,200,000 for escrow deposit for property 1371 Germano Way, Pleasanton, California.

52.    With respect to the third deposit of $600,000, its source was the TVU Wells Fargo business savings Account 4780. SU used this TVU Wells Fargo business savings account to hold large amounts of proceeds because the account was a high yield saving account. On December 15, 2010, Prominent Escrow Services, Inc. issued Receipt No. 6588 to SU for the sum of $600,000 for escrow deposit for property 1371 Germano Way, Pleasanton, California.

///

Complaint for Forfeiture
No. 11-CV-_____                    18

1    53.    On December 21, 2010, a Grant Deed was recorded in the Recorder's Office for

2  Alameda County which transferred title to the real property at 1371 Germano Way, Pleasanton,

3  California (APN 950-29-18) to Susan SU, a married woman as sole and separate property. Escrow

4  number escrow #4120-SP appears on the document. On December 21, 2010, SU's husband, Hong

5  S. Yang, conveyed all of his right, title and interest in that property to Susan through an Interspousal

6  Transfer Deed also filed with the Recorder's Office.

7                          FIRST CAUSE OF ACTION
                    (forfeitable property to which proceeds from fraud and
8                  misuse of visas, permits and other documents are traceable)

9    54.    The United States incorporates by reference the allegations in paragraphs one

10  through paragraph 53 as though fully set forth.

11    55.    Section 1546(a) makes it unlawful for any person who

12      knowingly forges, counterfeits, alters or falsely makes any immigrant or
       nonimmigrant visa, permit, border crossing card, alien registration receipt card or
13      other document prescribed by statute or regulation for entry into or as evidence of
       authorized stay or employment in the United States, or utters, uses, attempts to use,
14      possesses, obtains, accepts, or receives any such visa, permit, border crossing card,
       alien registration receipt card, or other document prescribed by statue or regulation
15      for entry into or as evidence of authorized stay or employment in the United States,
       knowing it to be forged, counterfeited, altered, or falsely made, or to have been
16      procured by means of any false claim or statement, or to have otherwise procured by
       fraud or unlawfully obtained . . . .
17

18  18 U.S.C. § 1546(a). Section 1546(a) is a specified unlawful activity ("SUA") pursuant to 18 U.S.C.

19  § 1961(1).

20    56.    In light of the foregoing and because the five defendant parcels of real property were

21  purchased with the proceeds from one or more violations of 18 U.S.C. § 1546(a), the five defendant

22  parcels are subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)©.

23                        SECOND CAUSE OF ACTION
                 (forfeitable property to which proceeds from mail fraud are traceable)

24    57.    The United States incorporates by reference the allegations in paragraphs one

25  through paragraph 56 as though fully set forth.

26    58.    Section 1341 makes it unlawful for any person, having devised a scheme or artifice

27  to defraud, or for obtaining money or property by false pretenses, to send or cause to be sent by the

28  postal service or other authorized depository for mail, any matter or thing for the purpose of

Complaint for Forfeiture
No. 11-CV-_____                    19

1 | executing the fraudulent scheme or artifice. 18 U.S.C. § 1341. Section 1341 is a SUA pursuant to
2 | 18 U.S.C. § 1961(1).

3     59.   In light of the foregoing and because the five defendant parcels of real property were
4 | purchased with the proceeds from one or more violations of 18 U.S.C. § 1341, the five defendant
5 | parcels are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)©.

**THIRD CAUSE OF ACTION**
(forfeitable property to which proceeds from wire fraud are traceable)

    60.   The United States incorporates by reference the allegations in paragraphs one through paragraph 59 as though fully set forth.

    61.   Section 1343 makes it unlawful for any person, having devised a scheme or artifice to defraud, or for obtaining money or property by false pretenses, to be transmitted by means of wire for the purpose of executing such fraudulent scheme or artifice. 18 U.S.C. § 1343. Section 1343 is a SUA pursuant to 18 U.S.C. § 1961(1).

    62.   In light of the foregoing and because the five defendant parcels of real property were purchased with the proceeds from one or more violations of 18 U.S.C. § 1343, the five defendant parcels are subject to judicial forfeiture pursuant to 18 U.S.C. § 981(a)(1)©.

**FOURTH CAUSE OF ACTION**
(property involved in money laundering)

    63.   The United States incorporates by reference the allegations in paragraphs one through paragraph 62 as though fully set forth.

    64.   Section 1957(a) makes it unlawful for any person who knowingly engages in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity. Specified unlawful activity includes fraud and misuse of visas, permits, and other documents; mail fraud; and wire fraud. 18 U.S.C. § 1961(1).

    65.   In light of the foregoing and because defendant parcels of real property were purchased with money involved in Section 1957(a) money laundering, the five defendant parcels are subject to judicial forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

///

///

\*     \*     \*     \*     \*

Accordingly, plaintiff United States of America requests that due process issue to enforce the forfeiture of defendants, that notice be given to all interested parties to appear and show cause why forfeiture should not be decreed, that judgment of forfeiture be entered and that plaintiff be awarded such other relief as may be proper and just.

Respectfully submitted,

MELINDA HAAG
United States Attorney

Dated: January 19, 2011

PATRICIA J. KENNEY
Assistant United States Attorney

Complaint for Forfeiture
No. 11-CV-_____

21

1

VERIFICATION

2    I, Special Agent Bryan Jang, state as follows:

3    1.    I am a Special Agent with the United States Department of Homeland Security –

4   Homeland Security Investigations.  I am the case agent in connection with this case, and familiar

5   with the facts, and the investigation leading to the filing of this Complaint for Forfeiture.  The

6   information in the Complaint is based on my personal knowledge and on information which came

7   to me in the ordinary course of this investigation

8    2.    I have read the Complaint for Forfeiture and believe the allegations contained in it

9   to be true.

10    *    *    *    *    *

11    I declare under penalty of perjury that the foregoing is true and correct.  Executed this

12   _18_ day of January, 2010, in _SAN FRANCISCO_ , California.

13

14

15   BRYAN JANG
     Special Agent
16   United States Department of Homeland Security
     Homeland Security Investigations
17

18

19

20

21

22

23

24

25

26

27

28

Complaint for Forfeiture
No. 11-CV-_____                        22